Marie Reininger, Transferee et al. [1] v. Commissioner. Reininger v. Commissioner
Docket Nos. 21273, 21274, 21275, 21276.
United States Tax Court
1952 Tax Ct. Memo LEXIS 231; 11 T.C.M. (CCH) 444; T.C.M. (RIA) 52131; May 7, 1952
*231 Alva C. Baird, Esq., 543 S. Spring St., Los Angeles 13, Calif., and William A Cruikshank, Esq., for the petitioners. Royal E. Maiden, Jr., Esq., and William P. Flynn, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings involve deficiencies, fraud penalties, and transferee liabilities for the years 1938 to 1944, inclusive. In the case of Carl Reininger, Docket No. 21274, there are income tax deficiencies and penalties as follows: Year
Deficiency
Fraud Penalty
1938
$ 142.11
$ 71.06
1939
148.09
74.05
1940
1,925.28
962.64
1941
38,214.38
19,107.19
1942
11,209.62
5,604.81
1943
20,440.17
10,220.09
1944
6,999.90
3,499.95
Ability Plastics, Inc., Docket No. 21276, involves deficiencies in income tax, declared value excess-profits tax, and excess profits tax for the year ended August 15, 1942, in the respective amounts of $1,255.38, $671.84, and $1,172.31. Marie Reininger, Transferee, Docket No. 21273, and Carl Reininger, Transferee, Docket No. 21275, involve transferee liability with respect to the deficiency determined against Ability Plastics, Inc.
The proceedings were consolidated for hearing. *232 The deficiencies against Carl Reininger result principally from respondent's determination that certain alleged family partnerships between him and his wife, Marie Reininger, and her father, Henry Petry, were not valid partnerships and that the income attributed to the partnerships is all taxable to the petitioner. Respondent has determined further that petitioner, Carl Reininger, fraudulently understated his income in his returns for all of the years 1938 to 1944, inclusive. In the absence of fraud the deficiencies for 1938, 1939, and 1940 are barred by the statute of limitations. Respondent has determined his net taxable income for all of the years involved on the basis of the annual increase in net worth. In the transferee proceedings petitioners concede that they are liable as transferees for any taxes due from Ability Plastics, Inc.
Findings of Fact The business in which petitioners were engaged was the manufacture and sale of certain types of molded plastics, tools and dies. This developed from a small beginning in the basement of the residence of one of the parties, Henry Petry, in 1935 to a substantial enterprise which was sold as a going business in 1943. Carl Reininger, *233 referred to hereinafter as petitioner, is an experienced tool and die maker. When he came to this country from Germany in 1924 he first located in Texas, but moved to Chicago in 1927 and resided there throughout the taxable years involved. He later moved to Phoenix, Arizona. His present home is in California. Petitioner met his present wife, then Marie Petry, in 1935. At that time she was operating a beauty parlor located in the home of her parents, Henry and Mathilda Petry. Petitioner for some time had been experimenting with the manufacture of beauty parlor equipment, especially the heating units used in giving permanent waves. He had rented a small space in a garage where he worked after hours. He was regularly employed in a mold and die shop. Marie offered to and did assist petitioner in working out plans for making the heating units. With this mutual interest they formed an acquaintance which resulted in their marriage in September 1936. Marie had previously been married and divorced and was then living with her parents. She had a daughter by this marriage over whom she was given custody in the divorce proceedings. Marie's parents had also immigrated to this country from Germany *234 when she was about 14 years of age. Sometime in the fall of 1935 and before their marriage petitioner and Marie and Henry Petry organized a partnership or joint venture under the name of Primor Manufacturing Company to make and sell the permanent wave heating units and possibly other plastic commodities. They set up the business in the basement of Henry Petry's residence. A small amount of equipment and materials which petitioner then had were moved over to the basement shop and other necessary equipment was installed. Petitioner and his wife and Henry Petry all worked in the shop after regular work hours and on week-ends and holidays. Henry Petry was regularly employed at a small salary at the plant of Jordan Packing Company where he had charge of the refrigerating equipment and other duties. All three of them contributed funds to the business from time to time for the purchase of equipment, materials, advertising and other expenses. A bank account was opened at one of the local banks in the name of the partnership with a deposit of $400. After manufacturing a considerable quantity of the heaters and advertising them to the trade, but before any substantial sales were made, *235 petitioner received notice they were infringing on a patent. They talked the matter over and decided to abandon the venture. Some of the equipment and materials on hand were later sold or used in another venture which was launched a short time later. The Primor Manufacturing bank account was closed out in February 1936. About the middle of 1938 petitioner and his wife and Henry Petry organized another partnership to manufacture tools, dies and plastics under the firm name of Ability Mold and Die Works. Space was rented in a public garage nearby. A bank account was opened under that name on which petitioner alone was authorized to draw. Petitioner and his wife were both to devote full time to the business. Henry Petry was to continue his employment with Jordan Packing Company at least until the new business had become established. He continued to work after hours for the partnership. Early in 1940 he resigned his job at Jordan Packing Company and began devoting full time to Ability Mold and Die Works. He helped to install the equipment and did most of the upkeep and repair work. For some time petitioner and his wife and Henry Petry did all of the work for Ability Mold and Die Works. *236 They worked seven days a week and almost every night. Later they employed part-time help. Some of the work was taken home by part-time employees for finishing. Petitioner's wife supervised this work and also took care of telephone calls, correspondence, and for a while kept all of the books and records. Petitioner and his wife filed joint income tax returns for 1938, 1939, and 1940 in which they reported income in the respective amounts of $4,202.50, $9,470.69, and $11,042.40. In 1941 petitioner and the other partners entered into an agreement with the two principals of a firm for whom they had been doing some plastic work, Borg Erickson Corporation, to dissolve the partnership, Ability Mold and Die Works, and form a corporation in which each group would have a one-half interest. The new corporation was organized under the name of Ability Plastics, Inc., and one-half of the capital stock was issued to petitioner and Marie, each receiving a one-fourth interest, and one-half to Borg and Erickson. Each of the four stockholders paid in $3,750 cash. Upon dissolution of the partnership the assets, exclusive of a portion of the inventory consisting of plastic powder, were purchased *237 by the corporation for a stated consideration of $35,000, payable $5,000 in cash and $30,000 in the corporation's promissory notes. The corporation gave an additional note for $2,473.78 in payment for the plastic powder. Petitioner became president, his wife vice president, Borg secretary, and Erickson treasurer of the corporation. A bank account was opened in the corporation's name with a cash deposit of $15,000. There soon developed dissension among the stockholders and in August 1942 the stock held by Borg and Erickson was purchased by the corporation for the exact amount of the cash which they had contributed. This left petitioner and his wife the sole stockholders of the corporation. What the parties intended to accomplish, and did accomplish, was to return to Borg and Erickson the investment which they had made and return the business to the former owners. There had never been any payment made on the $30,000 note of the corporation, but the small note for $2,473.78 had been paid. Thereafter, operation of the business by the petitioner and his wife and Henry Petry was resumed and the corporation, as such, became inactive. Partnership returns were filed for 1940 and 1941 in *238 the name of Ability Mold and Die Works reporting income in the respective amounts of $15,815.32 and $27,723.55. Petitioner and Henry Petry were shown as the partners in those returns. Petitioner and his wife filed a joint return for 1941 reporting a net income of $15,664.47. No corporation returns were filed on behalf of Ability Plastics, Inc.
On August 28, 1942, petitioner and his wife and Henry Petry formed a new partnership under the name of Ability Mold & Die Company. This partnership agreement recited that petitioner and his wife would contribute the lease on the occupied premises together with all of the machinery, tools and equipment of a total value of $25,000 in which Henry Petry had a $5,000 interest, and that Henry Petry would contribute an additional $5,000 cash, making their contributions equal. They were all to share equally in the profits and losses. Thereafter, the business was conducted under the partnership agreement for approximately seven months when in March 1943 the assets, exclusive of certain materials, were sold to Nu-Dell Manufacturing Company, Inc., for $30,000. Of this amount $20,000 was to be paid in cash and the balance at the rate of $500 per month *239 with interest. The materials were sold separately for $9,797.93. As a part of this transaction petitioner agreed to continue his services as an employee of the Nu-Dell corporation. A partnership return was filed in the name of Ability Mold and Die Works for the period August 15, 1942, to December 31, 1942, inclusive, reporting a net income of $15,907.40. The petitioner and his wife and Henry Petry were listed as the partners. Petitioner and his wife filed separate returns for 1942, 1943 and 1944 reporting net income as follows: Carl
Marie
Year
Reininger
Reininger
1942
$10,848.20
$4,550.32
1943
8,466.06
5,443.75
1944
1,569.40
1,671.11
A partnership return was filed for 1943 in the name of Ability Mold and Die Works reporting a net income of $24,809.66. The partners were listed as petitioner and his wife and Henry Petry. For the years 1940 to 1944, inclusive, Henry Petry and his wife filed joint income tax returns reporting net income in the respective amounts as follows: 1940
$ 5,387.38
1941
10,142.34
1942
5,998.57
1943
6,378.80
1944
1,296.27
The respondent began an investigation of petitioner's individual income tax *240 returns in March 1945 on a "tip" from an undisclosed informer. The investigation covered a period of several months. The agents assigned to the case had numerous interviews with petitioner and examined all available records of petitioner's business operations. Early in their investigation they decided that the records submitted to them did not correctly show petitioner's income and began a determination of his net income based on increase in net worth. The deficiencies above shown are based on the net income so determined. Petitioner's net worth at the close of each of the years 1937 to 1944, inclusive, as determined by the respondent was as follows: 1937
$ 7,274.97
1938
10,347.39
1939
16,211.58
1940
31,616.99
1941
$106,459.07
1942
129,081.60
1943
161,463.88
1944
175,149.51 For the purpose of ready comparison there is set out in the following table the net income reported in the partnership returns, the net income reported by petitioner and his wife, and Henry Petry and his wife in each year, and the net income of petitioner, as determined by respondent: Reported by
Reported by
Reported by
Petitioner
Henry Petry
Determined by
Year
Partnership
and His Wife
and Wife
Respondent
1938
$ 4,202.50
$ 7,267.42
1939
9,470.69
11,094.48
1940
$15,815.32
11,042.40
$ 5,387.38
20,959.77
1941
27,723.55
15,664.47
10,142.34
83,109.25
1942
15,907.40
15,398.52
5,998.57
32,479.08
1943
24,809.66
13,909.81
6,378.80
43,944.95 [1]
44,615.77 [2]
1944
3,241.17
1,296.27
20,171.01
*241 Respondent's net worth statements were made up from the available books and records of Primor Manufacturing Company and its successors, bank records, records of real estate and stock transfers and information from other sources. The books and records of Primor Manufacturing Company were meager and inaccurate. They had been kept in the beginning by petitioner's wife who had had no bookkeeping experience. Later a part-time accountant was employed. The partnership returns, like the books, were inaccurate and contained admitted errors, some of them plainly showing on the face of the returns. Respondent's net worth statements are likewise shown, in some instances, to be inaccurate and to result in overstatements of petitioner's income. The deficiencies determined against the petitioner individually are attributable largely to respondent's determination that petitioner was the sole owner of the business allegedly operated from time to time as a partnership and is taxable on all of the income therefrom. The petitioner and his wife and Henry Petry conducted their business affairs and managed their finances very much as a single family unit. There *242 was never any strict division of their partnership profits. Most of their income was invested in real estate and securities, sometimes in the name of one of the parties and sometimes another. They maintained several bank accounts from time to time, some joint and some separate, in which deposits and withdrawals were made with little regard to the separate rights of the parties. Funds might be taken from an account in the name of one of them and invested in real estate or securities in the name of one of the others. They neved had any strict accounting of their separate properties. Henry Petry put some of his separate earnings or savings into the business and got back some of the profits, but not in any strict proportion to his investment or his services. For a portion of the time he was carried as an employee and received regular wages. This was for the purpose of preserving his rights to certain employee benefits. In determining petitioner's net worth increase and net income for each of the taxable years respondent has included in petitioner's assets all of the properties found standing in the name of either the petitioner or his wife or Henry Petry in any way traceable to partnership *243 business. Petitioner's returns for the years 1938 to 1944, inclusive, were not fraudulent with intent to evade tax. The deficiencies determined against petitioner, Carl Reininger, for the years 1938, 1939 and 1940 are barred by the statute of limitations. Primor Manufacturing Company, Ability Mold and Die Works, and Ability Mold & Die Company (except for the period in which it was incorporated) were valid partnerships in which petitioner, Carl Reininger, his wife, Marie Reininger, and her father, Henry Petry, were equal partners. Opinion LEMIRE, Judge: The evidence, we think fails to support respondent's determination that petitioner's income tax returns for any of the years involved were fraudulent with intent to evade tax and we have so found above. In the absence of fraud the deficiencies determined against the petitioner for the years 1938, 1939 and 1940 are barred by the statute of limitations. There can be no doubt that the petitioner handled his business affairs and finances in a loose manner and was careless in the preparation of income tax returns, but these are not necessarily incidents of fraudulent intent. Inasmuch as the evidence leaves considerable doubt as *244 to the existence of any fraudulent intent on the petitioner's part to evade tax, respondent has failed to meet his statutory burden of proving fraud. As to the several partnerships the evidence is that petitioner and his wife and Henry Petry all contributed substantial capital and performed valuable services in building up the business from a small beginning in the basement of Henry Petry's home to a fairly successful manufacturing enterprise. We are convinced that the parties intended from the beginning and throughout the entire period under consideration, except for the short period of incorporation, to conduct the business as partners. It would serve no useful purpose to attempt to discuss each separate item of the respondent's extensive net worth statements. Likewise, it would be futile to undertake to reconcile respondent's determination with the returns filed by the partnerships and the petitioner. It is enough to observe that with our ruling on the validity of the partnerships respondent's whole determination falls for want of a sound basis. At the same time it has been made abundantly clear by the evidence adduced at the trial of the case that petitioner's returns as *245 well as those filed from time to time on behalf of the business in which he was the principal figure contain numerous inaccuracies and omissions of income. We are convinced after a careful study of the volumes of record (there are nearly 2,000 pages of oral testimony and some 283 exhibits) that no reasonably accurate determination of petitioner's tax liability for the years 1941, 1942, 1943, and 1944 can be made on the basis of the pleadings and evidence now of record. There are strong indications, however, that with our rulings on the principal issues of fraud and the validity of the partnerships the parties may be able to agree on a recomputation of the tax liabilities under Rule 50. On failure of such an agreement the parties will be given an opportunity for further hearings under amended pleadings properly framing the issues to be determined. In the proceeding entitled Ability Plastics, Inc., Docket No. 21276, respondent has determined deficiencies in income tax, declared value excess-profits tax and excess profits tax totaling $3,099.53. The notice of deficiency shows the following adjustments: Net income as disclosed by return
$4,330.89
Unallowable deductions and additional
income: (a) Depreciation on machinery and
equipment
2,615.92
(b) Raw materials inventory
2,473.78
Net income adjusted
$9,420.59
*246 It is alleged in the petition that respondent erred in making the above adjustments and in determining that the corporation had any excess profits tax liability. Respondent affirmatively pleaded in his answer that petitioner is liable for a delinquency penalty of $293.08 for failure to file an excess profits tax return. Petitioner concedes in its reply to the answer that it did not file an excess profits tax return but denies that its failure to do so was due to wilful neglect and not to reasonable cause. By an amended answer respondent further pleaded, affirmatively, that petitioner is liable for additional delinquency penalties of $387.33 and $249.01 for failure to file income and declared value excess-profits tax returns. Petitioner denied this allegation in its reply to the amended answer. The issue pertaining to the closing inventory adjustment made in the deficiency notice was conceded by petitioner's counsel at the hearing. In its brief petitioner states that - "The cases of Marie Reininger, Transferee (Docket No. 21273), Carl Reininger, Transferee (Docket No. 21275) and Ability Plastics, Inc. (Docket No. 21276) involve but one issue contested by the petitioners. That issue, *247 which remains for the Court's determination, is the rate of depreciation allowable on the corporation's machinery and equipment during its taxable year ended August 15, 1942." It is not very definite whether petitioner also concedes liability for the delinquency penalties, but the statement in its brief would so indicate. In any event there is no evidence that any corporation returns were ever filed by Ability Plastics, Inc., or that its failure to file such returns was due to reasonable cause. We must, therefore, sustain the respondent in his proposed assessment on the delinquency penalties for failure to file whatever returns were due. As to the depreciation issue petitioner testified that all of the machinery and equipment in question was assigned to the corporation by the predecessor partnership and that some of it had been in use since 1938. He estimated a useful life of only two and one-half or three years for some of the machinery such as bench lathes, and a somewhat longer life for other equipment. He gave it as his opinion based on his knowledge of the business and his familiarity with the particular equipment that its average useful life when acquired by the corporation *248 was not more than five years. There is no evidence to support respondent's determination that the machinery and equipment had a useful life of more than five years. His determination must, therefore, be set aside. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following are consolidated herewith: Carl Reininger; Carl Reininger, Transferee; and Ability Plastics, Inc.↩
1. Income tax. ↩
2. Victory tax.↩