ROBERT D. CHEYNE AND VIRGINIA CHEYNE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cheyne v. Commissioner
Docket No. 1257-76.
United States Tax Court
T.C. Memo 1977-361; 1977 Tax Ct. Memo LEXIS 80; 36 T.C.M. (CCH) 1439; T.C.M. (RIA) 770361; October 11, 1977, Filed E. J. Ball and Kenneth R. Mourton, for the petitioners. J. Michael Adcock and Thomas J. Miller, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax Year
Deficiency
Sec. 6653(b) [1]
1964
$ 941.18
$ 470.59
1965
1,150.25
575.13
1966
1,858.15
929.08
1967
2,365.71
1,182.86
1968
4,400.76
2,200.38
Concessions have been made by the parties. The issues presented for decision are: 1. Whether respondent is collaterally estopped from claiming that petitioner Robert D. Cheyne filed false and fraudulent Federal income tax returns for the years 1967 and 1968 because of petitioner's *82 acquittal under section 7206(1) for the same years. 2. Whether any part of the underpayment of income tax for each of the years 1964 through 1968 was due to fraud with intent to evade tax on the part of petitioner Robert D. Cheyne. 3. Whether the assessment of any deficiencies for the years 1964 through 1968 is barred by the statute of limitations. 4. Whether petitioner Robert D. Cheyne is entitled to deduct certain business expenses not claimed on his Federal income tax returns for the years 1964 through 1968. 5. Whether petitioner Robert D. Cheyne received additional income of $600 for each of the years 1965 through 1968 from the use of an automobile provided by the J. D. Fisher Buick Company. 6. Whether petitioner Robert D. Cheyne received additional income from the use of motel accommodations for the years 1966, 1967, and 1968 in the amount of $350 for each year. FINDINGS OF FACT Some of the facts are stipulated. The stipulation of facts and supplemental stipulation of facts, together with the attached exhibits, are incorporated herein by this reference. Robert D. Cheyne and Virginia Cheyne (petitioners) are husband and wife whose legal residence was *83 Bentonville, Arkansas, at the time they filed their petition in this case. They filed their joint Federal income tax returns for the taxable years 1964 through 1968 with the Southwest Internal Revenue Service Center at Austin, Texas. On their joint Federal income tax returns for the years in issue the petitioners stated gross income as follows: Year
Gross Income
1964
$ 10,748.89
1965
10,706.59
1966
10,621.98
1967
11,522.75
1968
13,153.91
On December 18, 1975, respondent mailed a statutory notice of deficiency to the petitioners covering the deficiencies and additions to tax for the years in issue. During the years 1964 through 1968 Robert D. Cheyne (hereinafter referred to individually as the petitioner) was employed by the University of Arkansas as Sports Information Director. In that capacity he produced three radio shows designated Razorback Scoreboard Show, Razorback Report Show and Razorback Basketball Report Show. All shows were operated in connection with either the University of Arkansas football or basketball games. The production of the shows was primarily for the information of the sports fans of the University of Arkansas. They were *84 not designed to produce substantial revenues, but were expected to cover the costs of production. Petitioner operated these shows on a cash basis because they were operated in connection with football or basketball games. The Razorback Basketball Report Show was a taped pre-game 10-minute show which was taped for each of the University's 24 basketball games during each of the 1967-1968 and 1968-1969 basketball seasons. The 1967-1968 season ran from December 1967 through March 1968 and the 1968-1969 season ran from December 1968 through March 1969. Some of the radio stations, because of conflicts with high school games, did not carry all of the 24 basketball games on their stations. The charge to each radio station was $5 per basketball game show. The Razorback Scoreboard Show was a 15-minute live production of University of Arkansas football games broadcast at 4:45 every Saturday afternoon during the football season for each year 1964 through 1968. The University of Arkansas played 10 football games per season and the charge for the Razorback Scoreboard Show was $5 per station per show. The Razorback Report Show was a 15-minute taped show appearing three times per week *85 during the football season on Mondays, Wednesdays, and Fridays, for 10 consecutive weeks consisting of analysis of past games and a preview of upcoming games. The Razorback Report Show was produced during the years 1964 through 1968 and the charge for the show was $4 per show or $12 per station per week. Petitioner received payments by check for the production of these shows from radio stations throughout Arkansas and surrounding states. None of the amounts received from the radio stations by petitioner in producing the three radio shows were included in his Federal income tax returns for the taxable years 1964 through 1968. The amounts received from radio stations for the three shows were as follows: Year
Amount
1964
$ 500.00
1965
1,050.00
1966
1,250.00
1967
3,846.00
1968
6,357.00
The following is a schedule which reflects payment made to petitioner by check on the account of KMCW radio for the production of the Raxorback Report Show: Date
Payee
Check No.
Amount
Endorsement
5-26-68
Razorback Report
173
$80.00
Razorback Report
Show
Show Bob Cheyne This amount was received by petitioner. The check was issued *86 in payment of amount due the listed payee for broadcasting the Razorback Report Show over radio station KMCW. The University of Arkansas did not receive any of the amount paid. The following is a schedule which reflects payments made to petitioner by check on the account of White River Valley Broadcasters, Inc., for the production of the Razorback Scoreboard Show and Razorback Report Show over radio station KBTA: Date
Payee
Check No.
Amount
Endorsement
11-13-64
Football Scoreboard
10266
$50.00
Football Scoreboard
Show
Bob Cheyne
11-27-65
Razorback Score-
1218
50.00
Razorback Scoreboard
board Show
Bob Cheyne
11-23-66
Razorback Score-
2122
50.00
Razorback Scoreboard
board Show
Bob Cheyne
7-7-67
Razorback Score-
2687
50.00
Razorback Scoreboard
board Show
Show Bob Cheyne
10-6-67
Razorback Report
3146
24.00
Razorback Report
Show
Show Bob Cheyne
11-2-67
Razorback Report
3211
48.00
Razorback Report
Show
Show Bob Cheyne
11-30-67
Razorback Report
3257
48.00
Razorback Report
Show
Show Bob Cheyne
10-5-68
Razorback Report
3917
24.00
Razorback Report
Show
Show Bob Cheyne
11-7-68
Razorback Report
3988
56.00
Razorback Report
Show
Show Bob Cheyne
11-29-68
Razorback Score-
4030
50.00
Razorback Scoreboard
board Show
Show Bob Cheyne
11-29-68
Razorback Report
4031
40.00
Razorback Report
Show
Show Bob Cheyne
*87 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show and/or Razorback Report Show over radio station KBTA. The University of Arkansas did not receive any of the amounts paid. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KBRI for the production of the Razorback Scoreboard Show and/or Razorback Report Show: Date
Payee
Check No.
Amount
12-10-65
Razorback Score-
958
$50.00
board Show
11-28-66
Razorback Score-
478
50.00
board Show
10-9-67
Razorback Report
713
24.00
Show
11-10-67
Razorback Report
Illegible
48.00
Show
12-7-67
Razorback Report
764
48.00
Show
12-15-67
Razorback Score-
772
50.00
board Show
10-9-68
Razorback Report
1031
24.00
Show
12-9-68
Razorback Score-
1100
50.00
board Show
12-9-68
Razorback Report
1101
40.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and/or Razorback Scoreboard Show over radio station *88 KBRI. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed by Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KAMD radio for the production of the Razorback Scoreboard Show or Razorback Report Show: Date
Payee
Check No.
Amount
12-2-66
Razorback Score-
18426
$ 50.00
board Show
10-6-67
Razorback Report
19224
24.00
Show
11-3-67
Razorback Report
19280
48.00
Show
12-28-67
Razorback Score-
19411
50.00
board Show
8-30-68
Razorback Report
20027
120.00
Show
4-15-68
Razorback Report
19726
48.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KAMD. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station *89 KJWH for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-23-66
Razorback Score-
2504
$50.00
board Show
12-15-67
Razorback Score-
3470
50.00
board Show
12-27-68
Razorback Score-
4386
50.00
board Show These amounts were received by petitioner. The check was issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KJWH. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KLYR for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-4-64
Football Score-
3819
$50.00
board Show
8-24-65
Razorback Score-
4173
50.00
board Show
12-9-66
Razorback Score-
4901
50.00
board Show
8-8-67
Razorback Report
5327
24.00
Show
11-6-67
Razorback Report
142
48.00
Show
12-10-67
Razorback Report
173
48.00
Show
10-7-68
Razorback Report
5673
24.00
Show
11-12-68
Razorback Report
299
56.00
Show
12-9-68
Razorback Score-
313
50.00
board Show
12-9-68
Razorback Report
312
40.00
Show
*90 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KLYR. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KCON radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-25-64
Football Score-
2442
$50.00
board Show
11-23-66
Razorback Score-
3094
50.00
board Show
12-16-67
Razorback Score-
3649
50.00
board Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KCON. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KCCB radio for the production of *91 the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-25-65
Razorback Score-
4887
$50.00
board Show
11-25-66
Razorback Score-
5848
50.00
board Show
12-23-67
Razorback Score-
6918
50.00
board Show
12-6-68
Razorback Score-
7841
50.00
board Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KCCB. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne.
The following is a schedule of amounts paid to petitioner Robert D. Cheyne by radio station KAGH for the production of the Razorback Report Show, Razorback Scoreboard Show, or Razorback Basketball Report Show: Show
Amount Paid
Year Received
Razorback Scoreboard
$50.00
1968
Show
Razorback Basketball
55.00
1968
Report Show
Razorback Basketball
65.00
1968
Report Show
Razorback Report Show
24.00
1968 The amounts were paid as indicated above and the University of Arkansas did not receive any of the amounts paid. The following is a schedule *92 which reflects payment made to petitioner by check on the account of radio station KDEW for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-11-68
Razorback Score-
569
$50.00
board Show This amount was received by petitioner. The check was issued in payment of the amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KDEW. The University of Arkansas did not receive any of the amount paid. The check was endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KDMS radio for the production of the Razorback Scoreboard Show or Razorback Report Show: Date
Payee
Amount
12-22-65
Razorback Scoreboard Show
$50.00
12-20-66
Razorback Scoreboard Show
50.00
11-20-67
Razorback Report Show
48.00
12-20-67
Razorback Scoreboard Show
50.00
11-20-68
Razorback Report Show
56.00
12-18-68
Razorback Scoreboard Show
50.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show *93 or Razorback Scoreboard Show over radio station KDMS. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show or Razorback Report Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of Radio Enterprises, Inc., - KELD Radio, for the production of the Razorback Scoreboard Show, Razorback Report Show, or Razorback Basketball Report Show: Date
Payee
Check No.
Amount
7-6-65
Razorback Score-
8204
$ 50.00
board Show
7-15-66
Razorback Score-
board Show
9064
50.00
7-18-67
Razorback Score-
9909
50.00
board Show
11-10-67
Razorback Report
10219
72.00
Show
12-8-67
Razorback Report
10292
48.00
Show
2-8-68
Razorback Report
1437
65.00
Show
3-12-68
Razorback Basketball
10522
55.00
Report Show
7-18-68
Razorback Report
10881
120.00
Show
7-8-68
Razorback Score-
10882
50.00
board Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show, Razorback Scoreboard Show, or Razorback Basketball *94 Report Show over radio station KELD. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show, Razorback Scoreboard Show or Razorback Basketball Report Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner on the account of Big Chief Broadcasting Company - KFAY Radio: Date
Payee
Amount
10-9-67
Razorback Report Show
$24.00
11-17-67
Razorback Report Show
48.00
3-5-68
Razorback Report Show
48.00
3-5-68
Razorback Scoreboard Show
50.00
12-13-68
Razorback Scoreboard Show
50.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KFAY. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KHOG radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-20-64
Football Scoreboard
383
$50.00
Show
11-27-65
Razorback Scoreboard
1333
50.00
Show
10-29-66
Razorback Scoreboard -
2051
50.00
University of Arkansas
1-24-68
Razorback Scoreboard
318
50.00
Show
12-19-68
Razorback Scoreboard
575
50.00
Show
*95 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreback Show over radio station KHOG. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KNWA radio for the production of the Razorback Report Show or Razorback Scoreboard Show: Date
Payee
Check No.
Amount
10-23-67
Razorback Report Show
1908
$ 24.00
11-20-67
Razorback Report Show
1968
48.00
1-8-68
Razorback Report Show
2046
48.00
1-8-68
Razorback Scoreboard
2048
50.00
Show
4-13-68
Razorback Report Show
2194
55.00
2-6-68
Razorback Report Show
2102
65.00
12-17-68
Razorback Report Show
2515
120.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KNWA. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report *96 Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KSPR radio for the production of the Razorback Scoreboard Show: Year Paid
Amount
1967
$50.00
1968
50.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KSPR. The University of Arkansas did not receive any of the amounts paid. The following is a schedule which reflects payments made to petitioner by check on the account of KBJT radio for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-6-65
Razorback Scoreboard
2359
$50.00
Show
11-23-66
Razorback Scoreboard
2640
50.00
Show
10-12-67
Razorback Scoreboard
3399
24.00
Show
11-14-67
Razorback Report Show
3169
48.00
12-11-67
Razorback Report Show
3455
48.00
12-20-67
Razorback Scoreboard
3474
50.00
Show
10-16-68
Razorback Report Show
3989
24.00
11-14-68
Razorback Report Show
3725
56.00
12-5-68
Razorback Scoreboard
4017
50.00
Show
12-5-68
Razorback Report Show
4018
40.00
*97 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KBJT. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KXJK radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-9-65
Razorback Scoreboard
4769
$50.00
Show
1-19-67
Razorback Scoreboard
5655
50.00
Show
1-9-68
Razorback Scoreboard
07310
50.00
Show
12-11-68
Razorback Scoreboard
08066
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KXJK. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects amounts paid by radio station KFPW for the *98 production of the Razorback Scoreboard Show and Razorback Report Show to petitioner by check: Year Paid
Amount
1964
$ 50.00
1965
50.00
1966
50.00
1967
170.00
1968
170.00 These amounts were received by petitioner. The amounts were paid for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KFPW. The University of Arkansas did not receive any of the amounts paid. The following is a schedule which reflects payments made to petitioner by check on the account of KFSA-AM for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-6-65
Razorback Scoreboard
2887
$50.00
Show
11-29-66
Razorback Scoreboard
4075
50.00
Show
11-24-67
Razorback Report Show
4787
48.00
11-20-67
Razorback Report Show
01714
24.00
11-22-68
Razorback Report Show
666500
56.00
1-19-68
Razorback Report Show
12162
98.00
2-9-68
Razorback Report Show
15406
65.00
4-5-68
Razorback Report Show
25610
55.00
10-25-68
Razorback Report Show
61411
24.00
12-6-68
Razorback Report Show
69378
90.00 These amounts were received by petitioner. The checks *99 were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KFSA-AM. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KMAG radio for the production of the Razorback Report Show and Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-7-65
Razorback Scoreboard
850
$50.00
Show
2-1-67
Razorback Scoreboard
1613
50.00
Show
11-30-67
Razorback Report Show
2217
72.00
12-2-67
Razorback Report Show
2233
48.00
12-26-67
Razorback Scoreboard
2251
50.00
Show
10-9-68
Razorback Report Show
2713
24.00
11-20-68
Razorback Report Show
2796
56.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KMAG. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback *100 Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payment made to petitioner by check on the account of KTCS radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-20-68
Razorback Scoreboard
4665
$50.00
Show This amount was received by petitioner. The check was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KTCS. The University of Arkansas did not receive any of the amount paid. The check was endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KHOZ radio for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
9-11-64
Football Scoreboard
A-1735
$50.00
Show
9-16-65
Razorback Scoreboard
A-3125
50.00
Show
12-5-66
Razorback Scoreboard
A-4877
50.00
Show
10-13-67
Razorback Report Show
A-6276
24.00
11-3-67
Razorback Report Show
A-6380
48.00
12-8-67
Razorback Report Show
A-6541
48.00
12-20-67
Razorback Scoreboard
A-6598
50.00
Show
10-10-68
Razorback Report Show
A-7915
24.00
11-11-68
Razorback Report Show
A-8062
56.00
12-9-68
Razorback Scoreboard
A-8209
50.00
Show
12-9-68
Razorback Report Show
A-8210
40.00
*101 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show over radio station KHOZ. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KAWW for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
1-13-68
Razorback Scoreboard
196
$50.00
Show
12-16-68
Razorback Scoreboard
468
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KAWW. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to the petitioner by check on the account of radio station KFFA for the production of the Razorback Scoreboard show as follows: Date
Payee
Check No.
Amount
12-12-64
Razorback Football
691
$50.00
Scoreboard
12-10-65
Razorback Scoreboard
1387
50.00
Show
12-9-66
Razorback Scoreboard
2137
50.00
Show
1-10-68
Razorback Scoreboard
2952
50.00
Show
12-10-68
Razorback Scoreboard
3601
50.00
Show
*102 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KFFA.The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KBHS for the production of the Razorback Report Show: Date
Payee
Check No.
Amount
10-6-67
Razorback Report Show
5835
$24.00
11-8-67
Razorback Report Show
5948
48.00
12-10-67
Razorback Report Show
6084
48.00
10-8-68
Razorback Report Show
6999
24.00
11-11-68
Razorback Report Show
7146
56.00
12-5-68
Razorback Report Show
7223
40.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show over radio station KBHS. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on *103 the account of radio station KXOW for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
10-16-67
Razorback Report Show
1006
$16.00
11-10-67
Razorback Report Show
1073
48.00
12-11-67
Razorback Report Show
1130
48.00
1-11-68
Razorback Scoreboard
1307
50.00
Show
10-10-68
Razorback Report Show
2277
24.00
11-8-68
Razorback Report Show
2408
56.00
12-10-68
Razorback Report Show
2506
40.00
12-10-68
Razorback Scoreboard
2507
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KXOW. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed by Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payment made to petitioner by check on the account of KZNG Broadcasting Company for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
6-5-67
University of Arkansas
1953
$50.00
Razorback Scoreboard
Show
*104 This amount was received by petitioner. The check was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KZNG. The University of Arkansas did not receive any of the amount paid. The following is a schedule which reflects payments made to petitioner by check on the account of KARK radio for the production of the Razorback Report Show, Razorback Scoreboard Show and Razorback Basketball Report Show: Date
Payee
Check No.
Amount
11-9-67
Razorback Report Show
2476
$48.00
1-9-68
Razorback Scoreboard Show
2942
2.00
2-8-68
Razorback Basketball
3198
65.00
Report Show
3-8-68
Razorback Basketball
3458
55.00
Report Show
12-10-68
Razorback Scoreboard
5749
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show, Razorback Scoreboard Show and Razorback Basketball Report Show over radio station KARK. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show, Razorback Scoreboard Show, or Razorback Basketball Report *105 Show, Bob Cheyne.
The following is a schedule which reflects payments made to petitioner by check on the account of KLRA, Inc., for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
7-8-66
Razorback Scoreboard
10670
$ 50.00
Show
7-19-67
Razorback Scoreboard
11942
50.00
Show
10-6-67
Razorback Report Show
12193
24.00
11-8-67
Razorback Report Show
12292
48.00
12-1-67
Razorback Report Show
12360
48.00
1-26-68
Razorback Report Show
12588
65.00
3-14-68
Razorback Report Show
12784
55.00
7-18-68
Razorback Scoreboard
13235
50.00
Show
7-18-68
Razorback Report Show
13236
120.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show and Razorback Scoreboard Show over radio station KLRA. The University of Arkansas did not receive any of the amounts paid.
The following is a schedule which reflects payments made to petitioner by check on the account of KVMA radio for the production of the Razorback Report Show or Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-8-66
Bob Cheyne
16810
$50.00
10-9-67
Bob Cheyne
17565
24.00
11-11-67
Razorback Report Show
17620
48.00
12-11-67
Razorback Report Show
17678
48.00
1-9-68
Razorback Scoreboard
17772
50.00
Show
10-10-68
Razorback Report Show
18355
16.00
11-11-68
Bob Cheyne
18444
56.00
*106 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KVMA. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show or Razorback Report Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KBOK radio for the production of the Razorback Report Show and Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-16-64
Football Scoreboard Show
9516
$50.00
11-27-65
Razorback Scoreboard
10430
50.00
Show
11-23-66
Razorback Scoreboard
11389
50.00
Show
10-10-67
Razorback Report Show
83
24.00
11-13-67
Razorback Report Show
182
48.00
12-11-67
Razorback Report Show
255
48.00
12-15-67
Razorback Scoreboard
277
50.00
Show
10-9-68
Razorback Report Show
1073
24.00
11-11-68
Razorback Report Show
1171
56.00
12-10-68
Razorback Report Show
1236
40.00
12-10-68
Razorback Scoreboard
1237
50.00
Show These amounts were received by petitioner. The checks *107 were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KBOK. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KENA for the production of the Razorback Report Show and Razorback Scoreboard Show: Date
Payee
Check No.
Amount
10-18-67
Razorback Report Show
463
$24.00
11-20-67
Razorback Report Show
500
48.00
12-31-67
Razorback Report Show
563
48.00
1-15-68
Razorback Scoreboard
583
40.00
Show
10-9-68
Razorback Report Show
1004
24.00
12-16-68
Razorback Report Show
1121
96.00
12-16-68
Razorback Scoreboard
1120
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KENA. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback *108 Report Show or Razorback Scoreboard Show and all checks were further endorsed by Bob Cheyne except Check No. 463. The following is a schedule which reflects payment made to petitioner by check on the account of Newport Broadcasting Company, Radio Station KTPA, for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
1-13-68
Razorback Scoreboard
1129
$50.00
Show This amount was received by petitioner. The check was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KTPA. The University of Arkansas did not receive any of this amount paid. The check was endorsed by Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KDRS radio for the production of the Razorback Report Show and Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-29-65
Razorback Scoreboard
3358
$50.00
Show
10-5-67
Razorback Report Show
242
24.00
11-2-67
Razorback Report Show
334
52.00
12-2-67
Razorback Report Show
446
44.00
2-12-68
Razorback Scoreboard
653
50.00
Show
8-16-68
Razorback Scoreboard
1093
50.00
Show
10-5-68
Razorback Report Show
1224
24.00
12-4-68
Razorback Report Show
1372
40.00
12-30-68
Razorback Report Show
1439
56.00
*109 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KDRS. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show or Razorback Report Show, Bob Cheyne.
The following is a schedule which reflects payments made to petitioner by check on the account of radio station KADL for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-31-65
Razorback Scoreboard
1733
$50.00
Show
12-27-66
Razorback Scoreboard
2094
50.00
Show
1-10-68
Razorback Scoreboard
2457
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KADL. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio station KOTN for the production *110 of the Razorback Report Show or Razorback Scoreboard Show: Date
Payee
Check No.
Amount
10-9-67
Razorback Report Show
1070
$24.00
1-15-68
Razorback Scoreboard
01279
50.00
Show
4-15-68
Razorback Report Show
1477
98.00
10-14-68
Razorback Report Show
1988
24.00
11-11-68
Razorback Report Show
02072
56.00
12-10-68
Razorback Scoreboard
02155
50.00
Show
12-10-68
Razorback Report Show
02156
40.00 These amounts were received by petitioner. The checks were were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KOTN.The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show or Razorback Report Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KPOC radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-17-65
Razorback Scoreboard
11940
$50.00
Show
12-20-66
Bob Cheyne
387
50.00
2-28-68
Razorback Scoreboard
13564
50.00
Show These amounts were *111 received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KPOC. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne.
The following is a schedule which reflects payment made to petitioner by check on the account of radio station KTPA for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
4-18-67
Razorback Scoreboard
541
$50.00
Show This amount was received by petitioner. The check was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KTPA. The University of Arkansas did not receive any of the amount paid. The check was endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payment made to petitioner by check on the account of KAMO radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-4-68
Razorback Scoreboard Show
1325
$50.00 This amount was received by petitioner. The check *112 was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KAMO. The University of Arkansas did not receive any of the amount paid. The check was endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KWCB radio for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-8-65
Razorback Scoreboard
3261
$50.00
Show
12-12-66
Razorback Scoreboard
3935
50.00
Show
10-9-67
Razorback Report Show
4481
24.00
11-10-67
Razorback Report Show
4563
48.00
12-11-67
Razorback Report Show
4621
48.00
1-10-68
Razorback Scoreboard
4654
50.00
Show
11-10-68
Razorback Report Show
5295
56.00
12-10-68
Razorback Report Show
127
90.00
and Scoreboard Show
10-10-68
Razorback Report Show
5210
24.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting Razorback Scoreboard Show or Razorback Report Show over radio station KWCB. The University of Arkansas did not receive *113 any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KBRS-AM for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-3-65
Razorback Scoreboard
3459
$50.00
Show
11-30-66
Razorback Scoreboard
4142
50.00
Show
10-20-67
Razorback Report Show
01713
24.00
11-24-67
Razorback Report Show
04786
48.00
12-29-67
Razorback Report Show
9068
48.00
1-5-68
Razorback Report Show
10147
50.00
10-18-68
Razorback Report Show
59932
24.00 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting Razorback Scoreboard Show and Razorback Report Show over radio station KBRS-AM. The University of Arkansas did not receive any of the amounts paid. The following is a schedule which reflects payments made to petitioner by check on the account of KWAK radio for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
12-7-64
Football Scoreboard
1042
$50.00
Show
12-10-65
Razorback Scoreboard
2110
50.00
Show
12-9-66
Razorback Scoreboard
2894
50.00
Show
10-10-67
Razorback Report Show
3519
24.00
11-10-67
Razorback Report Show
3598
48.00
12-11-67
Razorback Report Show
3640
44.00
12-15-67
Razorback Scoreboard
3681
50.00
Show
10-10-68
Razorback Report Show
4278
24.00
11-11-68
Razorback Report Show
4339
56.00
12-10-68
Razorback Report Show
4395
40.00
12-10-68
Razorback Report Show
4408
50.00
*114 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KWAK. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio KTFS for the production of the Razorback Report Show or Razorback Scoreboard Show: Date
Payee
Check No.
Amount
10-12-67
Razorback Report Show
662
$24.00
11-10-67
Razorback Report Show
749
48.00
12-13-67
Razorback Report Show
843
48.00
1-11-68
Razorback Scoreboard
929
50.00
Show
10-9-68
Razorback Report Show
1765
24.00
11-11-68
Razorback Report Show
1877
56.00
12-13-68
Razorback Report Show
1974
40.00
12-13-68
Razorback Scoreboard
1975
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Report Show or Razorback Scoreboard Show over radio station KTFS. The *115 University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show, Razorback Scoreboard Show, Razorback Report Show, Bob Cheyne, or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of KRLW radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
11-25-66
Razorback Scoreboard
6496
$50.00
Show
2-15-68
Razorback Scoreboard
7373
50.00
Show
12-6-68
Razorback Scoreboard
7984
50.00
Show These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KRLW. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects payments made to petitioner by check on the account of radio KWRF for the production of the Razorback Scoreboard Show and Razorback Report Show: Date
Payee
Check No.
Amount
11-13-64
Football Scoreboard Show
343
$50.00
12-5-66
Razorback Scoreboard
1710
50.00
Show
11-7-67
Razorback Report Show
2328
48.00
12-4-67
Razorback Report Show
2371
48.00
12-15-67
Razorback Scoreboard
2406
50.00
Show
10-7-67
Razorback Report Show
2278
24.00
10-7-68
Razorback Report Show
2968
24.00
11-7-68
Razorback Report Show
3030
56.00
*116 These amounts were received by petitioner. The checks were issued in payment of amounts due the listed payee for broadcasting the Razorback Scoreboard Show or Razorback Report Show over radio station KWRF. The University of Arkansas did not receive any of the amounts paid. All checks were endorsed Razorback Report Show or Razorback Scoreboard Show, Bob Cheyne. The following is a schedule which reflects a payment made to petitioner by check on the account of KSUD radio for the production of the Razorback Scoreboard Show: Date
Payee
Check No.
Amount
12-13-68
Razorback Scoreboard
4231
$45.00
Show This amount was received by petitioner. The check was issued in payment of amount due the listed payee for broadcasting the Razorback Scoreboard Show over radio station KSUD. The University of Arkansas did not receive any of this amount paid. The check was endorsed Razorback Scoreboard Show, Bob Cheyne.
Petitioner did not keep any contemporaneous records of the amounts he received from the radio stations for any of the three radio shows produced by him. Petitioner prepared without assistance his Federal income tax returns for the years 1964 through *117 1968. Petitioner has a bachelor of science degree from the University of Arkansas in Journalism and has taken a few hours of graduate work in history. In addition, he served as the editor of a Navy newspaper during World War II. During the investigation of petitioner's tax liabilities for the years 1964 through 1968, Special Agent Connaughton asked petitioner's counsel for any records of petitioner's income for the years in question. There were no specific records reflecting amounts received by petitioner from the radio stations. However, by examining bank deposits Mr. Connaughton determined income relating to the radio stations. The deposit slips did not specifically list the radio stations, but rather reflected only the amount of the deposit. The national advertising in the University of Arkansas football programs was, prior to and during the years in question, managed by the Spencer Advertising Company, New York, New York. It furnished the University of Arkansas pre-printed advertisements which were used in the University of Arkansas football programs and obtained national advertising clients for the University of Arkansas football programs. Pursuant to a contract with *118 the University of Arkansas, Spencer Advertising Company was to keep 15 percent of the amounts paid for advertising and was to remit the balance (less costs of printing) to the University of Arkansas. Warren King, an internal auditor for the University of Arkansas, conducted a routine audit of the advertising income of the University of Arkansas Athletic Department, and discovered that the University of Arkansas should have received $12,135.62 from Spencer Advertising Compny for the years 1964 through 1968, but only received $350 during such period. Petitioner caused a letter to be sent to the Spencer Advertising Company directing that $350 be sent to the University of Arkansas and that the balance be paid to him. These instructions were carried out by Spencer Advertising Company. Petitioner caused to be sent to the University of Arkansas a report on national advertising in the 1968 football program which did not accurately reflect income from the Spencer Advertising Company. The report showed total revenue from Spencer as $2,600 and net revenue as $350 when, in truth and fact, the total revenue was $6,053.36 and net revenue was $3,803.36. Petitioner was aware of the actual *119 revenue from Spencer Advertising Company which he had received, but he did not correctly report to the University of Arkansas with respect to these funds. There were no University of Arkansas records listing amounts received from Spencer Advertising Company for national advertising in the University of Arkansas football programs outside of the $350 received in 1968. The Athletic Department advertising is set out in the concession part of the Athletic Section of the University of Arkansas books and records. Although petitioner cooperated with Warren King with respect to finding out why certain companies were not billed for advertising, he did not disclose to University officials that he had received the payments from Spencer Advertising Company for such advertising. Because of petitioner's actions with respect to the advertising income from Spencer Advertising Company, he was asked to make restitution of the money and to resign his position at the University of Arkansas. On May 22, 1969, petitioner wrote a letter to the then president of the University of Arkansas asking for a second chance and requesting forgiveness for what he had done. In that letter he expressed regret *120 for the grief he had caused those he had known and respected at the University of Arkansas, including John Barnhill, the athletic director. The following is a schedule which reflects net payments made by Spencer Advertising Company from national advertising proceeds with respect to the University of Arkansas football programs for the years in question: Date
Payee
Check No.
Amount
3-2-64
Robert Cheyne - Program
5808
$1,831.34
Manager U of A
3-10-64
Robert Cheyne - Program
5930
221.62
Manager U of A
2-26-65
Robert Cheyne - Program
7408
2,462.28
Manager U of A
2-15-66
Robert Cheyne - Program
9055
1,865.23
Manager U of A
2-23-66
Robert Cheyne - Program
9181
553.92
Manager U of A
3-6-67
Robert Cheyne - Program
11049
845.29
Manager U of A
4-11-67
Robert Cheyne - Program
11531
1,915.21
Manager U of A
3-8-68
Robert Cheyne - Program
13426
2,440.73
Manager U of A These amounts were received by petitioner. The University of Arkansas did not receive any of the amounts. The amounts were not reported on petitioners' Federal income tax returns for the years in question. Petitioner repaid in 1969 to the University *121 of Arkansas the amounts he received from the Spencer Advertising Company. On July 12, 1967, the Fort Smith Quarterback Club issued check number 871 in the amount of $350 payable to Bob Cheyne, Program Manager, in payment of amounts due the University of Arkansas for advertising in the University of Arkansas football programs. This amount was received by petitioner, but was not reported on petitioners' 1967 Federal income tax return. The University of Arkansas did not receive any of this amount. On September 8, 1967, Mr. and Mrs. Thomas D. Olmstead issued check number 1667 in the amount of $200 in payment of amounts due the University of Arkansas for advertising in the University of Arkansas football program which related to the Heber Springs Razorback Club. This amount was received by petitioner, but was not reported on petitioners' 1967 Federal income tax return. The University of Arkansas did not receive any of this amount. During the period 1964 through 1968, petitioner served as announcer in the annual State Highschool Basketball and Annual Allstar Football-Basketball games. For these services, the Arkansas Broadcasters Association compensated petitioner by check as *122 follows: Date
Payee
Check No.
Amount
3-2-64
Bob Cheyne
18
$175.00
8-28-64
Bob Cheyne
48
75.00
4-6-65
Bob Cheyne
16
105.00
8-28-65
Bob Cheyne
36
37.50
8-25-66
Bob Cheyne
154
75.00
3-9-67
Bob Cheyne
112
125.00
9-20-67
Bob Cheyne
106
75.00
8-17-68
Bob Cheyne
194
25.00 These amounts were not reported on petitioners' Federal income tax returns for the periods in question. During the years 1967 and 1968 petitioner wrote articles for the annual magazine entitle "Razorback State Football" published by Wonder State Publications. For his services he received $200 during each of the years 1967 and 1968. These amounts were not reported on petitioners' 1967 and 1968 Federal income tax returns. For the taxable year 1964, petitioners deposited $13,738.80 to their joint checking account; withheld cash in the amount of $554; redeposited cash or deposited loans (non-taxable) in the amount $810of, and had unreported income in the amount of $4,272.84. For the taxable year 1965, petitioners deposited $17,858.65 to their joint checking account; withheld cash in the amount of $69.70; deposited non-taxable sums in the amount of $3,790.87; *123 and had unreported income in the amount of $4,837.43. For the taxable year 1966, petitioners deposited $17,170.36 to their joint checking account; withheld cash in the amount of $218.26; deposited non-taxable sums in the amount of $1,731.16; had unreported income from these bank deposits in the amount of $6,812.02; and had additional unreported income in the amount of $675 which was not included in the deposits for 1966. For the taxable year 1967, petitioners deposited $16,156.06 to their joint checking account; withheld cash in the amount of $1,202.50; deposited non-taxable sums in the amount of $318.46; had unreported income from deposits in the amount of $7,466.84; and had additional unreported income for the year 1967 which was not included in the deposits in the amount of $2,154.91. For the taxable year 1968, petitioners deposited $18,087.35 to their joint checking account; withheld cash in the amount of $1,743.90; deposited non-taxable sums in the amount of $379.90; had unreported income from deposits in the amount of $9,656.05; and had additional unreported income not deposited in the amount of $2,122. In 1967 the petitioner entered and won a contest of College and *124 University Sports Information Directors. His prize was a 1968 Chevrolet Camaro.This prize was not reported as income on petitioners' 1968 Federal income tax return, the year of receipt. The value at the time of receipt was $2,300 and is includable in petitioners' income for 1968. During each of the years 1965, 1966, 1967, and 1968, J.D. Fisher Buick Agency, Fayetteville, Arkansas, furnished petitioner a new automobile in exchange for advertising in the University of Arkansas football programs. The value of the use of this car which was not reported in the income tax returns of petitioners for these years was $600 per year. The automobile was used by petitioner on University business 50 percent of the time and for personal purposes 50 percent of the time. During each of the years 1966, 1967, and 1968, the Velda Rose Motel, Hot Springs, Arkansas, furnished petitioner with due bills for motel accommodations in exchange for advertising in the University of Arkansas football programs. The value of these due bills which was not reported in the Federal income tax returns of petitioners for these years $350was per year. Petitioner did not keep books and records of the amounts *125 paid for additional business expenses not claimed on his returns. Some of the amounts petitioner incurred as additional business expenses were reimbursed to him by the University of Arkansas by the procedure of obtaining cash advances from the Razorback Fund. These cash advances were replaced in the Razorback Fund when petitioner was paid pursuant to his voucher claims. The University of Arkansas checks paying the voucher claims generally went directly to the Razorback Fund, and, although payable to petitioner, were endorsed by Vera Moody for him. The cash obtained from the University of Arkansas pursuant to the vouchers did go back into the Razorback Fund. Petitioner traveled extensively and obtained cash advances from the Razorback Fund one to two times per week during the various sports seasons. Petitioner incurred liability for football tickets which was, in fact, paid by the University of Arkansas Athletic Department. Some of the amounts paid to petitioner by the NCAA for travel reimbursement were also claimed and paid to petitioner by the University of Arkansas. Hence, additional out-of-pocket expenses incurred by petitioner on these trips were paid by the University *126 of Arkansas. Petitioner attended an NCAA meeting in Tucson, Arizona, in January 1967, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher for this trip, and the fund was reimbursed by the University of Arkansas. Petitioner attended an NCAA meeting in Louisville, Kentucky, in March 1967, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher for this trip, and the fund was reimbursed by the University of Arkansas. Petitioner attended an NCAA meeting in New York, New York, in June 1967, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher for this trip, and the fund was reimbursed by the University of Arkansas. Petitioner attended an NCAA meeting in New York, New York, in January 1968, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher, and the fund was reimbursed by the University of Arkansas. Petitioner attended an NCAA meeting in Santa Barbara, California, in February 1968, *127 and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher, and the fund was reimbursed by the University of Arkansas for this trip. Petitioner attended an NCAA meeting in Los Angeles, California, in March 1968, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher, and the fund was reimbursed by the University of Arkansas. Petitioner attended an NCAA meeting in New York, New York, in September 1968, and was reimbursed by the NCAA for travel and per diem. He obtained a cash advance from the Razorback Fund, submitted a voucher for this trip, and the fund was reimbursed by the University of Arkansas. The University of Arkansas reimbursed petitioner for taxi, telephone, and some miscellaneous expenses. Petitioner paid the following deductible business expenses in connection with the Razorback Scoreboard Show for the years in issue: Type of Expense
1964
1965
1966
1967
1968
Engineering
$250.00
$250.00
$250.00
$250.00
$250.00
Wire Information
75.00
75.00
75.00
75.00
75.00
Fee
Transportation and
300.00
300.00
300.00
300.00
300.00
Meals for Spotters
Subscription Fee
100.00
100.00
100.00
100.00
100.00
for Weekly Foot-
ball Service
Total
$725.00
$725.00
$725.00
$725.00
$725.00
*128 Petitioner paid the following deductible business expenses in connection with the Razorback Report Show for the years in issue: Type of Expense
1964
1965
1966
1967
1968
Engineering
$ 500.00
$ 500.00
$ 500.00
$ 500.00
$ 500.00
Guest Fees
300.00
300.00
300.00
300.00
300.00
Tapes
150.00
150.00
150.00
150.00
150.00
Promotional Tapes
250.00
250.00
250.00
250.00
250.00
CATV Cable
60.00
60.00
60.00
60.00
60.00
Total
$1,260.00
$1,260.00
$1,260.00
$1,260.00
$1,260.00
Petitioner paid the following deductible business expenses in connection with the Razorback Basketball Report Show for the years in issue: Type of Expense
1968
Guest Fees
$720.00
Tapes
120.00
Total
$840.00
Petitioner paid other deductible business expenses for the years in issue, as follows: Type of Expense
1964
1965
1966
1967
1968
Travel Uniforms
$120.00
$ 40.00
$120.00
$120.00
Cleaning of Travel
40.00
40.00
40.00
$ 40.00
40.00
Uniforms
Attache Case and
75.00
60.00
10.00
75.00
10.00
Spotter Board
Professional Dues
50.00
50.00
50.00
50.00
50.00
Total
$285.00
$190.00
$220.00
$165.00
$220.00
*129 Petitioners and respondent did not execute an agreement extending the period for assessment of taxes for the year 1964. Petitioners' counsel and respondent executed an agreement with respect to the taxable year 1965 extending the period for assessment of taxes for that year to April 15, 1973. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioners' counsel and respondent executed an agreement with respect to the taxable years 1965 and 1966 extending the period for assessment of taxes for those years to December 31, 1974. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for such years. Petitioners' counsel and respondent executed an agreement with respect to the taxable year 1966 extending the period for assessment of taxes for that year to December 31, 1975. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioners' counsel and respondent executed an agreement with respect to the taxable year 1965 extending the period for assessment of taxes for that year to December 31, 1975. *130 Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioners' counsel and respondent executed an agreement with respect to the taxable year 1967 extending the period for assessment of taxes for that year to December 31, 1974. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioners' counsel and respondent executed an agreement with respect to the taxable year 1967 extending the period for assessment of taxes for that year to December 31, 1975. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioners' counsel and respondent executed a consent with respect to the taxable year 1968 extending the period for assessment of taxes for that year to December 31, 1975. Said agreement is valid only if there is a 25 percent omission of gross income from petitioners' return for that year. Petitioner was indicted, pursuant to section 7206(1) of the Code, in Criminal No. F-73-CR-7 in the United States District Court for the Western District of Arkansas, on two counts that *131 he "wilfully and knowingly" subscribed to his 1967 and 1968 Federal income tax returns which were verified by a written declaration that they were made under penalties of perjury and filed with the Internal Revenue Service. He entered a plea of not guilty to the indictment. He was tried and on November 29, 1973, a not guilty verdict was rendered on both counts of the indictment. This is reflected in the judgment of the United States District Court, Western District of Arkansas, dated November 29, 1973. ULTIMATE FINDINGS OF FACT 1. No part of the underpayment of income tax for each of the years 1964 through 1968 was due to fraud on the part of petitioner. 2. The assessment of a deficiency for the year 1964 is barred by the statute of limitations under the provisions of section 6501(a) of the Code. 3. For each of the years 1965 through 1968 the petitioners omitted from each of their Federal income tax returns gross income in excess of 25 percent of the amount of gross income stated on such returns. Therefore, under section 6501(e)(1)(A) the assessment of deficiencies for each of the years 1965 through 1968 is not barred by the 6-year period of limitations, as extended *132 by the parties pursuant to section 6501(c)(4). 4. Petitioner is entitled to deduct the following business expenses for the years in issue: Year
Amount
1964
$2,280.00
1965
2,175.00
1966
2,205.00
1967
2,130.00
1968
3,045.00
5. Petitioner realized income of $300 per year for the taxable years 1965 through 1968 from the use of an automobile furnished by J. D. Fisher Buick Company. 6. Petitioner realized income of $350 per year for 1966, 1967, and 1968 from due bills for motel accommodations furnished to him in exchange for advertising in the University of Arkansas football programs. OPINION Issue 1--Collateral Estoppel
Petitioner contends that respondent is collaterally estopped from asserting the additions to tax for fraud for the years 1967 and 1968 because of his acquittal on criminal charges of filing false and fraudulent income tax returns under section 7206(1). Respondent argues that petitioner's position is without merit and unsupported by law. We agree with the respondent that the doctrine of collateral estoppel does not apply in these circumstances. The degree of the burden of proof is greater in criminal cases than in civil *133 cases. Helvering v. Mitchell,303 U.S. 391 (1938). In Lias v. Commissioner,24 T.C. 280 (1955), affd. 235 F. 2d 879 (4th Cir. 1956), cert. denied 353 U.S. 935 (1957), this Court said at page 321: The final contention of the petitioner that the jury found him not guilty of willful attempt to evade income taxes for the years 1942 to 1946, inclusive, which cover a part of the years before us, requires no extended discussion. In Helvering v. Mitchell,303 U.S. 391, the Supreme Court held that an acquittal of a taxpayer on a charge of willful attempt to evade or defeat income tax was no bar to a collection of the 50 per cent addition to the tax for fraud. And in Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F. 2d 358 (4th Cir. 1965), we said at page 57: What respondent does contend here is that under the doctrine of collateral estoppel a taxpayer who has been convicted of willfully attempting to evade his income taxes may not thereafter relitigate in this forum the question whether the tax deficiencies resulting from his previous attempted evasion were "due to fraud. *134 " Clearly, such a contention is not inconsistent with the principle laid down in Helvering v. Mitchell,supra, because the main thrust of that case was simply that an acquittal in a criminal proceeding wherein a greater burden of proof is required does not work an estoppel in a civil case dependent upon the same finding of fact, but wherein the burden of proof is lesser. Because an acquittal does not negative a fact in a subsequent suit wherein a lesser degree of proof is required, the same conclusion does not follow from the converse of such a situation, i.e., where the criminal trial resulted in a conviction. * * * See also Otsuki v. Commissioner,53 T.C. 96, 112 (1969); Stratton v. Commissioner,54 T.C. 255, 283-284 (1970); Benes v. Commissioner,42 T.C. 358, 384 (1964), affd. 355 F. 2d 929 (6th Cir. 1966); Gonzalez v. Commissioner,T.C. Memo. 1977-240 (July 27, 1977). Accordingly, we hold that petitioner's acquittal on criminal charges of filing false and fraudulent income tax returns for 1967 and 1968 did not determine that he did not file false and fraudulent returns *135 for civil purposes and, therefore, is not a bar to a subsequent civil determination which asserts civil fraud penalties. Issue 2--Additions to Tax under Section 6653(b)
While respondent may not be collaterally estopped to claim civil fraud, it does not necessarily follow that he has sustained his burden of proof as to fraud for the years 1964 through 1968. Fraud is never presumed. It must be proved by clear and convincing evidence. Carter v. Campbell,264 F. 2d 930, 935 (5th Cir. 1959); Green v. Commissioner,66 T.C. 538, 549 (1976); Pigman v. Commissioner,31 T.C. 356, 370 (1958). The Commissioner bears the burden of proving fraud. Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Arlette Coat Co. v. Commissioner,14 T.C. 751 (1950). The existence of fraud is a question of fact to be resolved upon consideration of the entire record before us. Gajewski v. Commissioner,67 T.C. 181, 199 (1976). Neither gross negligence nor mere suspicion of fraud will suffice. Mitchell v. Commissioner,118 F. 2d 308, 310 (5th Cir. 1941), remanding 40 B.T.A. 424 (1939), *136 on remand 45 B.T.A. 822 (1941); Ferguson v. Commissioner,14 T.C. 846, 849 (1950). To establish fraud the Commissioner must show that the taxpayer deliberately intended to evade the payment of taxes, which he knew or believed he owed, by conduct intended to conceal, mislead or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F. 2d 1002, 1004 (3d Cir. 1968), cert. denied 393 U.S. 1020 (1969); Mitchell v. Commissioner,supra at 310. In fairness to the parties we have made detailed findings of fact based upon the stipulations, documentary evidence, and the testimony of several witnesses. [2] We believe the petitioner did understate his income for the years in issue and that he did deal in cash without adequate records. But we also believe he had substantial business expenses, only part of which have been allowed. Obviously, the petitioner handled his business affairs in a loose manner and he was careless in the preparation of his Federal income tax returns. However, such acts are not necessarily incidents of fraudulent intent. Reininger v. Commissioner,11 T.C.M. 444 (1952). *137 Although he had minimal knowledge of accounting, bookkeeping, and tax matters, petitioner's education and business experience as a sports information director for a large state university would certainly justify the conclusion that he should have known better and that he was grossly negligent. But these elements do not constitute proof that he did know better and that his returns were fraudulent. Petitioner cooperated with respondent's representatives. He did not mislead them. He did not attempt to conceal the income he received from the sports shows. After examining and evaluating the facts of record, we conclude that the respondent has failed to carry his burden of proving fraud by clear and convincing evidence. In addition to the elements previously enumerated, we have given weight to the fact that the petitioner was acquitted by his peers of criminal tax charges, even though we are cognizant of the greater burden of proof required in such an action. We have also given weight to the candor and credibility of the petitioner and to his reputation *138 for honesty and veracity. [3]
Issue 3--Statute of Limitations
Having decided that there was no fraud, it follows that the statute of limitations is a bar to the assessment and collection of any deficiency for the year 1964. Section 6501(a) of the Code. The period of assessment for 1964 was not extended by agreement of the parties. However, as to the years 1965 through 1968, the respondent has alleged and contends that he is entitled to the 6-year period provided for in section 6501(e)(1)(A), [4] as extended by the parties pursuant to section 6501(c)(4). Petitioners' Federal income tax returns for the years 1965 through 1968 were filed on the following dates: Year
Date Return Filed
1965
April 15, 1966
1966
April 15, 1967
1967
April 15, 1968
1968
April 15, 1969
*139 Timely agreements executed by the parties extended the period for assessment for each of the above years to December 31, 1975. The statutory notice of deficiencies covering such years was mailed to the petitioners on December 18, 1975, which date was prior to the expiration of the 6-year period of limitations applicable under section 6501(e)(1)(A) as extended by the parties under section 6501(c)(4). Twenty-five percent of the amount of "gross income" stated in the returns for the years in question was as follows: Gross Income
25 Percent Year
Stated
of Gross Income
1965
$10,706.59
$2,676.65
1966
10,621.98
2,655.50
1967
11,522.75
2,880.69
1968
13,153.91
3,288.48
The amounts omitted from gross income, as reflected in our findings of fact, exceed 25 percent of stated gross income in each of the years 1965 through 1968. Consequently, it is clear that the assessment and collection of deficiencies in petitioners' Federal income taxes for the years 1965 through 1968 are not barred by the statute of limitations. We so hold. Issue 4--Business Expenses
Petitioner contends that he paid substantial business expenses in connection with his *140 duties at the University of Arkansas, and in particular with respect to the Razorback Scoreboard Show, the Razorback Report Show and the Razorback Basketball Report Show. He has claimed the following business expenses: Year
Total Expenses
1964
$5,939.00
1965
6,014.00
1966
5,959.00
1967
6,014.00
1968
7,102.00
It is respondent's position that petitioner is not entitled to the claimed business expenses. Petitioner did not maintain any books and records of his cash payments to engineers, guests, and spotters or other expenditures. Although there are no substantiating records, the petitioner has given credible testimony regarding the expenses and has urged us to apply the approximation rule of Cohan v. Commissioner,39 F. 2d 540, 544 (2d Cir. 1930). We are satisfied from the testimony that some expenses were reimbursed by the University of Arkansas; that the petitioner did not pay for football tickets for automobile dealers; that the petitioner is not entitled to claimed travel and entertainment expenses which have not been substantiated pursuant to section 274 and the applicable Treasury regulations; and that the petitioner is not entitled *141 to any office-in-home expenses, Sharon v. Commissioner,66 T.C. 515, 522-525 (1976), on appeal (9th Cir.). In other respects we think an approximation is justified. [5] Therefore, we have made as close an approximation as we can, "bearing heavily" upon the petitioner "whose inexactitude is of his own making." Cohan v. Commissioner,supra at 544. The business expenses allowed are set forth in our findings of fact and can be given effect in the Rule 155 computations. Issue 5--Use of Automobiles
The issue as to the petitioner's use of automobiles furnished by the J. D. Fisher Company is factual. Petitioner contends that he did not realize income in the years 1965 through 1968 in the amount of $600 per year from the use of such automobiles because they were supplied to the University of Arkansas Athletic Department and were used by the petitioner when he was *142 on University business. To the contrary, respondent's position is that $600 is includable in the income of petitioner for each year because (1) he admitted he used the cars in commuting from home to work and for other personal purposes and (2) he failed to allocate the value of the cars attributable to business purposes. We are satisfied, as set forth in our findings of fact, that such automobiles were used 50 percent of the time on University business and 50 percent of the time for personal purposes. Dole v. Commissioner,43 T.C. 697, 707 (1965), affd. per curiam 351 F. 2d 308 (1st Cir. 1965). Therefore, we hold that the petitioner realized income of $300 for each of the years 1965 through 1968. Issue 6--Use of Motel Accommodations
This issue is also factual. Petitioner contends that due bills provided to the University of Arkansas for his accommodations at the Velda Rose Motel in Hot Springs, Arkansas, do not constitute income to him for the years 1966, 1967, and 1968 in the amount of $350 per year because he was on University business on such trips. Respondent, on the other hand, argues that the petitioner has failed to carry his burden *143 of proof on this issue and, therefore, he did realize additional income of $350 each year for his use of the motel accommodations during 1966, 1967, and 1968. We agree with the respondent. The only evidence in the record is contained in the stipulation of facts that the Velda Rose Motel "furnished Robert D. Cheyne with due bills for motel accommodations in exchange for advertising in the University of Arkansas football programs," and that the value ( $350 for each year) of the due bills was not reported in petitioners' income tax returns for the years 1966, 1967, and 1968. There is no evidence indicating whether the accommodations were furnished to petitioner when he was on University business. He has failed in his burden of proof on this issue. Respondent's determination in this respect is presumptively correct. Welch v. Helvering,290 U.S. 111 (1933). To reflect the concessions made by the parties and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. All statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, unless otherwise indicated.↩
2. We commend counsel for their thorough stipulations of facts and the expeditious manner in which testimony was elicited.↩
3. Paul V. Galloway, Bishop of the Methodist Church, testified regarding petitioner's good reputation in the communities where he has lived. Petitioner's parents were in the Salvation Army; his two brothers are ministers; and he is a lay leader of the North Arkansas Conference of the Methodist Church.↩
4. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. * * *
(e) Substantial Omission of Items.--Except as otherwise provided in subsection (c)-- (1) Income Taxes.--In the case of any tax imposed by subtitle A-- (A) General rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. For purposes of this subparagraph--↩
5. We believe the petitioner's testimony that he paid the former basketball coach, P. T. "Duddy" Waller, $720 during the 1967-1968 season for appearing with him on about 24 pre-game Razorback Basketball Report Shows. It is inconceivable that Mr. Waller got only $5 per program.↩